UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

JAVIER MOLINA-PORTILLO,

     Petitioner,

v.

TODO BLANCHE, et al.,[1]

     Respondents.

No. 1:26-CV-100-H

**ORDER**

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Javier Molina-Portillo, a native and citizen of El Salvador, is one such alien, having illegally entered the United States 28 years ago. His habeas petition, filed after the Fifth Circuit's decision in *Buenrostro-Mendez*, demands his immediate release based on the text of the INA, the Fifth Amendment, the APA, the Suspension Clause, and the *Accardi* doctrine. Dkt. No. 1.

In light of *Buenrostro-Mendez*, Molina-Portillo's claim based on the INA is foreclosed. His remaining claims fail on the merits. Due process does not require his release. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Molina-Portillo are not entitled to be at liberty in the United States, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Molina-

---

[1] Todd Blanche assumed the role of Acting Attorney General on April 2, 2026. Thus, he is automatically substituted as a party to this action. *See* Fed. R. Civ. P. 25(d).

Portillo's Suspension Clause and APA claims fail, too.  And his *Accardi* claim is not cognizable in habeas.  Molina-Portillo's motion to transfer (Dkt. No. 8) and petition (Dkt. No. 1) are therefore denied.

## 1.     Background

Molina-Portillo illegally entered the United States in 1998 at or near Harlingen, Texas.  Dkt. Nos. 1 ¶ 2; 10 at 9.  He later received parole and Temporary Protected Status, Dkt. No. 1 ¶ 2, but his TPS status expired in March 2025.  Dkt. No. 9 at 2–3.  Both parties agree that he is considered an "arriving alien" under the INA.  Dkt. Nos. 1 ¶ 2; 9 at 2.  During his time in the United States, Molina-Portillo has established a family.  Dkt. No. 12 at 7.  He was also caught in 2015 transporting an illegal alien near Marfa, Texas.  *See* Dkt. No. 10 at 5–6.[2]

In March 2026, ICE placed Molina-Portillo into removal proceedings with a Notice to Appear, charging him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  Dkt. No. 10 at 11; *see* 8 U.S.C. § 1182(a)(6)(A)(i).  He was subsequently detained at the Bluebonnet Detention Center in Anson, Texas, but ICE later transferred him to the Rio Grande Processing Center in Laredo, Texas, where he remains in custody.  *See* Dkt. No. 8 at 2.

Molina-Portillo is held without bond and neither requested nor received a bond hearing.  *See* Dkt. No. 1 ¶ 2.  That is because, Molina-Portillo concedes, immigration judges "do[] not have jurisdiction to redetermine custody" of arriving aliens.  *Id.*; *see* 8 C.F.R.

---

[2] The attached EARM report identifies the incident occurring in December 2015 (Dkt. No. 10 at 5), but in one place the report erroneously states the date of the incident as December 2014 (*id.* at 6).

§ 1236.1(c)(11) (limiting authority to that defined in Section 1003.19(h)); *id.*

§ 1003.19(h)(1)(i)(B) (providing that "an immigration judge may not redetermine conditions

of custody imposed . . . [upon a]rriving aliens in removal proceedings").  Thus, it would be

"an exercise in futility" to seek a bond hearing.  *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822,

825 (5th Cir. 2000).

Instead, Molina-Portillo filed a petition for a writ of habeas corpus.  Dkt. No. 1.  The

petition states five claims for relief.  His first claim—ostensibly presented to preserve the

argument for appeal—argues that his detention is unlawful under the INA.  *Id.* ¶¶ 44–48.

His second claim contends that his detention violates his rights under the Fifth

Amendment's Due Process Clause.  *Id.* ¶¶ 49–54.[3]  He asserts in his third claim that his

continued detention without a bond hearing constitutes arbitrary and capricious agency

action under the APA.  *Id.* ¶¶ 55–62.  Fourth, he argues that the lack of individualized

review for his claims violates the Constitution's Suspension Clause.  *Id.* ¶¶ 63–72.  Finally,

he raises an *Accardi* claim, arguing that the respondents failed to follow their own

regulations in arresting and processing him.  *Id.* ¶¶ 73–81.

As mentioned above, the petition preserves for appeal a statutory claim foreclosed by

the Fifth Circuit's decision in *Buenrostro-Mendez*, which upheld the government's

mandatory-detention policy under Section 1225.  *See* 166 F.4th at 498.  There, the Fifth

---

[3] At two points in his petition, Molina-Portillo makes an oblique reference to the Fifth Amendment's equal protection component, noting that *Buenrostro-Mendez* did not address any such challenge.  Dkt. No. 1 ¶¶ 30, 47.  This may be an artifact from a template petition including that claim.  *See Chi v. Warden, Bluebonnet Detention Facility*, No. 1:26-CV-067, Dkt. No. 9 (N.D. Tex. Apr. 13, 2026) (addressing a version of this template including the equal-protection claim).  "[C]ourts are not compelled to liberally construe the pleadings of parties represented by counsel."  *Barron v. United States*, 111 F.4th 667, 679 (5th Cir. 2024) (Ramirez, J., concurring).  So, the Court declines to address that claim here.  Were the Court to do so, it would deny any equal-protection claim for the reasons discussed in *Chi*, No. 1:26-CV-067, Dkt. No. 9 at 8–10.

Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747, 754 (N.D. Tex. 2026)).

### 2.    Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### 3.    Analysis

As noted above, Molina-Portillo raises five claims in his habeas petition. Dkt. No. 1 ¶¶ 44–81. The claims run the gamut; they include a statutory claim under the INA, a Fifth Amendment Due Process Clause claim, an APA claim, a claim alleging a violation of the

Supsension Clause, and an *Accardi* claim. *Id.* As explained below, *Buenrostro-Mendez* forecloses Molina-Portillo's first claim. Thus, the Court turns to his remaining claims. The Court has considered whether the Due Process Clause[4] and the APA[5] entitle illegal aliens to individualized bond hearings in numerous prior cases. Even so, the Court considers the arguments raised in Molina-Portillo's petition to address whether he is entitled to release on any of his five remaining claims. The answer is no.

### A.   Molina-Portillo's motion to transfer is denied.

As a preliminary matter, the Court denies Molina-Portillo's motion to transfer this case to the Southern District of Texas. *See* Dkt. No. 8. The federal courts have the traditional authority to, "[f]or the convenience of parties and witnesses, in the interest of justice," to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Whether to do so is left to the Court's discretion, as limited by the plain text of the statute. *See also Rumsfeld v. Padilla*, 542 U.S. 426, 463 n.7 (2004) (Stevens, J., dissenting) ("If, upon consideration of the traditional venue principles, the district court in which a habeas petition is filed determines that venue is inconvenient or improper, it of course has the authority to transfer the petition.").

Molina-Portillo only offers one ground for transfer: that, given his transfer to a facility in the Southern District of Texas, venue is *only* proper there. Dkt. No. 8 at 2. But that is incorrect. "It is well established that jurisdiction over the petitioner attaches with the

---

[4] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 814 F. Supp. 3d 747; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, 814 F. Supp. 3d 685 (N.D. Tex. 2025).

[5] *See, e.g.*, *Garibay-Robledo*, 814 F. Supp. 3d at 760.

initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner

and the accompanying custodial change." *Smith v. Fleming*, No. 4:02-CV-440, 2002 WL

31114021, at *2 (N.D. Tex. Sept. 20, 2002) (citing *McClure v. Hopper*, 577 F.2d 938, 939–40

(5th Cir. 1978)); *see also Moler v. Wells*, 18 F.4th 162, 166 n.7 (5th Cir. 2021) (explaining that

"venue [is] determined at the outset of litigation and [is] not affected by subsequent events")

(alterations in original and quotation omitted)).  Thus, the Court retains jurisdiction over

Molina-Portillo's petition.

The Court sees no other persuasive reason to grant the motion to transfer.  The

parties have fully briefed this matter and it is ripe for resolution.  At best, granting transfer

will merely delay the resolution of the petition by requiring another court to become

acquainted with the parties' assertions; if not by requiring that court to order additional

briefing.  Denying transfer thus provides both parties with an efficient resolution of the

petition and is in the interests of justice.  Thus, the motion (Dkt. No. 8) is denied.

B.    **Because the Court assumes jurisdiction over Molina-Portillo's petition, the Suspension Clause is not implicated.**

The Court exercises its statutory jurisdiction under 28 U.S.C. § 2241 to address the

merits of Molina-Portillo's petition.  His assertion that the respondents have "categorically

bar[red] all custody review" is therefore puzzling.  Dkt. No. 1 ¶ 71.[6]  He does not explain,

for example, which jurisdiction-stripping provision of the INA might be implicated by his

claims, such that review would be unavailable.  Section 1252(g) "does not bar courts from

reviewing an alien detention order, because such an order, while intimately related to efforts

---

[6] Indeed, Molina-Portillo asserts that the Fifth Circuit's decision in *Buenrostro-Mendez* does not "strip[] this Court of jurisdiction . . . to adjudicate constitutional challenges to immigration detention or to review whether the Executive's custody scheme violates governing law."  Dkt. No. 1 ¶ 33.

to deport, is not itself a decision to execute removal orders." *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (internal quotation marks omitted). And the Supreme Court in *Jennings v. Rodriguez* rejected the respondents' proposed reading of the INA's jurisdiction-stripping provisions because it would "make claims of prolonged detention effectively unreviewable." 583 U.S. 281, 293 (2018). Seeing no merit to Molina-Portillo's Suspension Clause claim, the Court turns to the four remaining claims. *See also Livas v. Myers*, 455 F. Supp. 3d 272, 278 n.9 (W.D. La. 2020) (noting that "no cause of action arises under the Suspension Clause itself").

C.    *Buenrostro-Mendez* **forecloses Molina-Portillo's INA claim.**

Molina-Portillo challenges his detention as unlawful under the INA and its implementing regulations. *Id.* ¶¶ 44–48. He concedes, however, that *Buenrostro-Mendez* forecloses any statutory claim here, and only seeks to preserve his claim for appeal. *Id.* ¶¶ 29, 44. His concession is correct. Both parties agree that Molina-Portillo is an "arriving alien." Dkt. Nos. 1 ¶ 2; 9 at 2. Under Section 1225(a)(1), that makes him an "applicant for admission." And as an applicant for admission, binding Fifth Circuit precedent requires that he be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498. Thus, Molina-Portillo's INA claim fails.[7]

D.    **The Fifth Amendment does not require the government to give Molina-Portillo a bond hearing.**

Next is Molina-Portillo's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 49–54. Because *Buenrostro-Mendez* did not directly address this question, the Court turns to

---

[7] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.4.

Molina-Portillo's arguments. He maintains that the respondents' decision to detain him without materially changed circumstances since his parole violates his substantive and procedural due process rights. *See id.* ¶¶ 36, 38. But either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."

*Id.* at 526.  Against that backdrop, the notion that substantive due process requires an *ex ante* determination of an alien's flight risk or danger—or, for that matter, a bond hearing—is untenable.[8]

A procedural due process claim fares no better.  As an "applicant for admission," Molina-Portillo has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Molina-Portillo relies on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See* Dkt. No. 12 at 6.  The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges.  The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002).  In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025).  The Supreme Court applied *Mathews* in *Landon v. Plasencia*,

---

[8] Molina-Portillo cites to a District of Nevada decision that concluded otherwise. *Jacobo Ramirez v. Noem*, ___ F. Supp. 3d ___, No. 2:25-CV-2136, 2025 WL 3270137, at *5 (D. Nev. Nov. 24, 2025) (Boulware, J.) (granting preliminary injunctive relief).  Because that decision fails to discuss *Demore*, it fails to persuade.

emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)).  Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen.  *Landon*, 459 U.S. at 32.  In the latter category, aliens "request[] a privilege and [have] no constitutional rights."  *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted).  Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).

In response, Molina-Portillo relies on a number of district court decisions, mostly from the Western District of Texas.  These decisions are some of the few that defend *Mathews*' application and, though Molina-Portillo only cites it in passing, the wellspring of this position is *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668 (W.D. Tex. 2025).  There, the Western District distinguished *Thuraissigiam* as a case regarding due-process rights in matters of deportation, as opposed to detention.  That court also cited the decisions of several circuit courts that analyzed Section 1226-based due-process claims.  *Id.* at 683.  On that reasoning, it applied *Mathews* and ordered the petitioner's release.  *Id.* at 685–88; *see also*

– 10 –

Dkt. No. 12 at 9–11 (incorporating these arguments).  But *Lopez-Arevelo* is unpersuasive for several reasons.

First, *Lopez-Arevelo*'s characterization of *Thuraissigiam* is almost the reverse of the Supreme Court's reasoning and holding.  True, the *Thuraissigiam* petitioner did not seek "release from custody."  591 U.S. at 115.  He sought only to secure further opportunity for immigration relief.  *Id.*  But the Court denied the petitioner's due process claim in reliance on "more than a century of precedent."  *Id.* at 138.  Unsurprisingly, that long legal tradition, which *Lopez-Arevelo* does not address, rested upon aliens seeking release from detention.  *See, e.g.*, *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892) (recognizing the baseline requirements and limits of habeas corpus for unadmitted aliens).  Far from suggesting a divergence, *Thuraissigiam* reinforced a longstanding tradition that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application."  591 U.S. at 139 (quoting *Landon*, 459 U.S. at 32).  That includes detention as much as it includes the underlying deportation proceeding.

Second, and relatedly, recent Supreme Court precedent suggests pre-removal detention cases are cut from the same cloth as *Thuraissigiam*.  In *Demore*, the Supreme Court reasoned that "deportation proceedings 'would be in vain if those accused could not be held in custody pending the inquiry into their true character.'"  538 U.S. at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).  It therefore upheld a petitioner's mandatory detention "for the limited period of his removal proceedings" under Section 1226(c).  *Id.* at 531.  Congress provided process, and the petitioner in that case was not due anything more.

– 11 –

Third, the *Lopez-Arevelo* court errs in suggesting that due process is distinguished by "place—not status." 801 F. Supp. 3d at 684; *Ochoa v. Vergara*, ___ F. Supp. 3d ___, No. 1:26-CV-266, 2026 WL 482211, at *2 (W.D. Tex. Feb. 20, 2026) (same). That suggestion cannot be squared with *Thuraissigiam*, which makes clear that "place" is not the relevant consideration and dismissed place-based distinctions as rendering the traditional admission-based system of due process for aliens "meaningless." 591 U.S. at 139. "On the contrary," it said, "aliens who arrive at ports of entry—even those paroled elsewhere in the country *for years* pending removal—are treated for due process purposes as if stopped at the border." *Id.* (emphasis added) (internal quotation marks omitted).

Fourth, the case law upon which *Lopez-Arevelo* relies provides no persuasive reasoning in its favor. Only one of the circuit cases on which it relies provides its reasoning for applying the *Mathews* factors, and even that decision fails to consider the Supreme Court's emphasis on limited process articulated in *Thuraissigiam*, *Landon*, *Demore*, and many other cases. *Black v. Decker*, 103 F.4th 133, 147–51 (2d Cir. 2024) (adopting *Mathews* because of the consensus of other circuits and the Supreme Court's application of *Mathews* outside of the immigration context). In light of these considerations, *Lopez-Arevelo* fails to persuade.

With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). No part of the statute "says anything whatsoever about bond hearings." *Id.* No part of the statute says anything about *ex ante* proceedings. And, indeed, the INA's implementing regulations provide with

– 12 –

equal clarity that aliens like Molina-Portillo are not entitled to any custody determination. *See* 8 C.F.R. §§ 1003.19(h), 1236.1(c)(11).  Accordingly, Molina-Portillo is not entitled to an *ex ante* determination or a bond hearing as a matter of procedural due process.[9]

### E.     The APA precludes judicial review of Molina-Portillo's claim.

Molina-Portillo argues that "[h]abeas relief is warranted to remedy . . . unlawful agency conduct."  Dkt. No. 1 ¶ 62.  Section 704 of the APA states, in no uncertain terms, that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review."  5 U.S.C. § 704 (emphasis added). Because Molina-Portillo requests habeas relief as the remedy for his APA claim, he unwittingly admits that there is, in fact, an adequate remedy outside of the APA. Moreover, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the invalidity of their confinement' these claims must be brought in habeas."  *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *9 (N.D. Tex. Dec. 13, 2025) (O'Connor, C.J.) (quoting *J.G.G.*, 604 U.S. 670, 672 (2025)).  The APA thus does not provide for judicial review of his claim.

### F.     Molina-Portillo's *Accardi* claim is not cognizable in habeas.

Finally, Molina-Portillo argues that the respondents failed to follow the "immigration-specific arrest and processing regulations" set out in 8 C.F.R. § 287.8(c). Dkt. No. 1 ¶ 75.  By arresting him without a warrant and without satisfying the regulatory requirements governing such arrests, he argues, the respondents violated the *Accardi*

---

[9] Molina-Portillo separately asserts that the respondents' failure to follow their own regulations violates his due process rights.  *See* Dkt. No. 1 ¶ 37.  This is part of his *Accardi* claim, which is addressed below.

doctrine. *See id.* ¶¶ 75–76. To remedy this violation, Petitioner demands "his immediate release" from custody. *Id.* ¶ 81.

The *Accardi* doctrine requires agencies to follow their own rules and procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). The regulatory requirements for the arrests of aliens are set forth in 8 C.F.R. § 287.8(c). "An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested . . . is an alien illegally in the United States." § 287.8(c)(2)(i). And "[a] warrant of arrest shall be obtained except when" the officer with authority to arrest "has reason to believe that the person is likely to escape before a warrant can be obtained." § 287.8(c)(2)(ii).

Merits aside, Molina-Portillo's *Accardi* claim "is inapposite in a petition for habeas relief." *Huynh v. Noem*, No. 4:26-CV-017, 2026 WL 694481, *3 (N.D. Tex. Mar. 12, 2026) (O'Connor, C.J.). Writs of habeas corpus are "available to correct the denial of fundamental constitutional rights, but [they] may not be used to correct mere irregularities or errors of law." *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959). "The Fifth Circuit has confirmed in other contexts that the failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available." *Nguyen v. Noem*, 797 F. Supp. 3d 651, 664 (N.D. Tex. 2025) (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003)). In other words, habeas exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre*, 525 F.2d at 935–36. It is "not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether

– 14 –

the [alien] can lawfully be detained." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923).

Molina-Portillo does not explain why his detention—which is mandatory under 8 U.S.C. § 1225(b)(2)(A)—is rendered unlawful by virtue of the alleged regulatory noncompliance. He states, without a supporting citation, that "[c]ontinued detention based on an arrest that contravenes binding regulations is itself unlawful." Dkt. No. 1 ¶ 79. And he asserts that habeas is an "appropriate vehicle to remedy detention that results from an agency's failure to follow its own regulations," citing *Accardi*, 347 U.S. at 267–68 and *INS v. St. Cyr.*, 533 U.S. 289, 301–05 (2001). *Id.* ¶ 80. But *St. Cyr* and *Accardi* merely recognized the availability of habeas to "answer[] questions of law that arose in the context of discretionary relief." 533 U.S. at 307 (citing *Accardi*, 347 U.S. 260). They did not turn the Great Writ into a free-wheeling vehicle for challenging all manner of regulatory violations.

Therefore, the Court concludes that Molina-Portillo's *Accardi* claim is not cognizable in habeas. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that when a petitioner's claim will not necessarily spell speedier release, it does not lie within the core of habeas). Because Molina-Portillo is subject to mandatory detention as a matter of binding Fifth Circuit precedent, *see Buenrostro-Mendez*, 166 F.4th at 498, nothing about the purported regulatory violation calls into question the validity of his confinement.

### G.    Counsel is advised to review the requirements for a TRO.

In a previous order (Dkt. No. 14), the Court denied Molina-Portillo's motion for a TRO (Dkt. No. 13). The Court takes this opportunity to remind counsel of the role and purpose of a TRO motion.

– 15 –

"The purpose of a preliminary injunction is to preserve the *status quo* and prevent irreparable injury until the court renders a decision on the merits." *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *4 (5th Cir. Feb. 17, 2022) (citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)). Likewise, the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

For that reason, it is well established that "a motion or application for a TRO or preliminary injunction is properly denied when it is no more than a 'motion to win.'" *Perez v. Noem*, No. 3:25-CV-2920, 2025 WL 3532430, at *6 (N.D. Tex. Nov. 14, 2025), *R. & R. adopted*, 2025 WL 3530951 (Dec. 9, 2025).  Even in the preliminary injunction context, it is "generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits," and doing so requires "clear and unambiguous notice of the court's intent" to convert a preliminary motion into final relief. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395–96 (1981) (quotation omitted).  A TRO motion is more severe because it is so accelerated that the order may issue "without written or oral notice to the adverse party." Fed. R. Civ. P. 65(b).

Now consider counsel's TRO motion.  It is deficient in two respects.  First, as the Court already explained in its order denying relief (Dkt. No. 14), motions for ultimate relief guised in the form of TROs are not "something courts do." *Saechao v. Noem*, No. 3:26-CV-624, 2026 WL 602783, at *2 (N.D. Tex. Mar. 4, 2026) (Starr, J.).

Second, unlike the typical TRO motion, counsel did not seek relief at the first possible juncture.  Instead, she only sought relief after the close of full merits briefing on the

petition.  Ordinarily, a request for a TRO is prompted by a genuinely new and urgent development, which explains why the opposing party may have no opportunity to respond. Given that the grounds for relief here were salient throughout the pendency of the petition, it is hard to see how counsel could have concluded that this TRO motion, issued late on Good Friday afternoon and hours after counsel filed Molina-Portillo's reply brief, was motivated by genuine urgency, rather than an attempt by counsel to force the Court into granting relief on a more expedited basis than the typical petition, which is already subject to careful yet expedited review.  But TRO motion is not a tool for cutting in line.

Suffice it to say, TRO motions like this one require one of two things: (1) entering an order denying the frivolous motion, which wastes judicial resources; or (2) issuing a final merits judgment on an accelerated timeline, which is unfair to those petitioners who are seeking identical relief, have had petitions pending for a greater amount of time, and have filed no TRO motion.  Here, the Court opted for the former option.  The Court has roughly 700 active cases on its docket.  Nearly 100 of those cases are habeas petitions raising the same or similar issues as the contentions raised here.  The Court takes each case seriously and provides the cases with the care and attention they deserve.  That necessarily means, though, that any time the Court spends on one matter is time that could be spent on resolving other matters.

Accordingly, counsel is advised to review the TRO requirements outlined in Rule 65 and applicable caselaw.  Future frivolous TRO motions may result in an order to show cause why sanctions should not be imposed.

**4.     Conclusion**

In short, Molina-Portillo's motion to transfer (Dkt. No. 8) is denied.  As an "applicant for admission," he is properly detained without bond under Section 1225(b)(2)(A).  *Buenrostro-Mendez*, 166 F.4th at 498.  The Fifth Amendment does not require his release in these circumstances, nor does the APA, the Suspension Clause or the *Accardi* doctrine.  Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on April 28, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE